ECKERSTROM, Chief Judge:
¶ 1 Stephen Malone appeals from his convictions and sentences for first-degree murder, aggravated assault, and two counts of endangerment. On appeal, he contends, inter alia, that he should have been allowed to present evidence that he had brain damage of a type that made it more likely that he acted impulsively, rather than with premeditation. For the following reasons, we affirm Malone's convictions and sentences.
Factual and Procedural Background
¶ 2 "We view the facts and all reasonable inferences therefrom in the light most favorable to sustaining the convictions." State v. Boozer , 221 Ariz. 601, ¶ 2, 212 P.3d 939 (App. 2009), quoting State v. Powers , 200 Ariz. 123, ¶ 2, 23 P.3d 668 (App. 2001). For eleven or twelve years, Malone and A.S. were in a romantic relationship. The relationship was tumultuous and involved frequent altercations. On the evening of June 11, 2013, A.S. and her sister, E.S., drove to Malone's house to return some perfume Malone had given to A.S. Two of Malone and A.S.'s children were in the backseat. While driving there, A.S. spoke to Malone on the phone and E.S. heard her sister say, "So you're going to keep threatening me ... well, whatever. I'm still leaving."
¶ 3 When they arrived at Malone's house, he approached the car and took the perfume. Malone then asked A.S. to stay so that his mother could see the children and asked her to exit the car. A.S. declined and began to drive away. Malone got into his car and followed her. He eventually passed her and positioned his car to block her from leaving the neighborhood.
¶ 4 A.S. called Malone's mother, who suggested A.S. return to the house. She did so and Malone, still in pursuit, pulled his car up behind her. Malone's mother handed E.S. a bag and told her "go, now, go." When A.S. started to drive away, Malone's mother positioned herself in the middle of the road and attempted to stop Malone from following her. Malone, however, drove around his mother, overtook A.S. and again blocked her vehicle. He exited his car, confronted the victim, then reached into his car for a gun and began shooting into A.S.'s car. After firing several shots, Malone returned to his car and drove away. Two bullets struck A.S., killing her. Malone also shot and injured E.S. The entire episode lasted approximately five to six minutes.
¶ 5 After a trial wherein Malone conceded that he had committed the homicide but maintained that he did not premeditate or deliberate the killing of his ex-girlfriend, he was convicted as described above and sentenced to natural life in prison, followed by consecutive prison sentences totaling 13.5 years. This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 13-4031 and 13-4033(A)(1).
Evidence of Impulsivity
¶ 6 At trial, Malone presented evidence that he had a character trait for impulsivity to rebut the state's claim that the murder was premeditated. Malone's mother testified that he had poor coping skills and an inability to handle "stress and ... emotional tension."
*595 She testified about several events in Malone's life that demonstrated, in her opinion, "extreme" impulsive behavior. Malone also presented a clinical neuropsychologist to provide expert testimony regarding his character trait for impulsivity. The expert testified he had observed Malone and administered psychological exams, and concluded Malone "clearly does have a character trait for impulsivity." The trial court, however, precluded the expert from providing any testimony about impulsivity "based on findings of brain damage or brain injury," stating that such testimony would "be encompassed by mental incapacity/diminished capacity/mental defect." Malone now asserts the trial court improperly precluded this evidence.
¶ 7 Arizona law does not recognize a defense of diminished capacity. State v. Mott , 187 Ariz. 536, 540-41, 931 P.2d 1046, 1050-51 (1997). Consequently, "evidence of a defendant's mental disorder short of insanity ... to negate the mens rea element of a crime" is not allowed. Id. at 541, 931 P.2d at 1051. A defendant may, however, introduce evidence that he has a character trait for impulsivity as evidence "that he did not premeditate the homicide." State v. Christensen , 129 Ariz. 32, 35, 628 P.2d 580, 583 (1981). As the state correctly notes, "the critical inquiry in this case is determining whether the evidence [Malone] proffered regarding his alleged brain damage is properly characterized as evidence of diminished mental capacity or as evidence demonstrating that [Malone] has an impulsive personality trait." We conclude it is evidence of both.
¶ 8 In Christensen , our supreme court established that evidence of impulsivity is admissible because "[t]he establishment of the character trait of acting without reflection tends to establish that appellant acted impulsively. From such a fact, the jury could have concluded that he did not premeditate the homicide." Id. Here, evidence that Malone suffered from a species of brain damage that made it more difficult for him to reflect-and therefore more likely to act impulsively-would be both relevant and probative on the question of whether he suffered a character trait of impulsivity.[1] And, it would be probative and relevant on the question of whether he acted impulsively rather than with premeditation when he shot A.S. It would therefore be admissible evidence under Christensen . See 129 Ariz. at 35, 628 P.2d at 583.
¶ 9 However, the precluded brain-damage testimony also can be correctly characterized as evidence of a lesser or diminished capacity to act with premeditation. Understood this way, it would constitute "evidence of a defendant's mental disorder short of insanity" offered to negate mens rea -a species of evidence our supreme court found inadmissible in Mott , 187 Ariz. at 540-41, 931 P.2d at 1050-51.
¶ 10 Importantly here, Mott distinguished Christensen and explained the distinction between admissible evidence of a character trait and inadmissible evidence of diminished capacity. It reasoned: "The proffered testimony [in Christensen ] was not that he was incapable , by reason of a mental defect, of premeditating or deliberating" but rather that he had a tendency to act impulsively. 187 Ariz. at 543-44, 931 P.2d at 1053-54. Read together, Mott and Christensen establish that while a defendant is precluded from maintaining that he cannot reflect upon his actions (or has a lesser capacity to do so), he may introduce evidence demonstrating an ingrained character trait that rendered it less likely he acted with reflection and deliberation. And, in State v. Leteve , our supreme court has more recently reaffirmed its holding that expert testimony, including that based on testing, is admissible to support a defendant's claim that he possessed a character trait of impulsivity. 237 Ariz. 516, ¶ 24, 354 P.3d 393 (2015).
¶ 11 Here, Malone did not proffer the expert testimony regarding brain damage to prove that he was incapable of reflecting. Rather, the results of those tests were offered *596 to demonstrate a brain condition that rendered it less likely that he may have done so. Accordingly, under Christensen and in accord with our supreme court's clarification of that case in Mott, we conclude the evidence was admissible to the extent offered to corroborate the defendant's claims that he had a character trait of impulsivity. The evidence would not have been admissible to support a claim that Malone was "incapable" of reflecting on, or premeditating, the homicide.
¶ 12 We recognize that our supreme court's opinions on the admissibility of impulsivity evidence are nuanced. Those cases have not squarely encountered the admissibility of evidence that may be fairly characterized as both admissible evidence of a character trait for impulsivity and inadmissible evidence of a mental defect. But in Christensen, our supreme court did provide a workable standard for distinguishing admissible from inadmissible evidence. 129 Ariz. at 34-35, 628 P.2d at 582-83. That standard, which itself allows evidence for one purpose (to show that a defendant had an ingrained tendency to act a certain way) but not another (to show that a defendant was incapable of premeditating an offense), aptly and logically resolves the problem here. See id.
¶ 13 Although our dissenting colleague maintains our purpose-based analysis contradicts our supreme court's reasoning in Leteve , that case reaffirmed that the results of an expert's tests were admissible under Christensen. Leteve , 237 Ariz. 516, ¶ 24, 354 P.3d 393. And, in its dicta distinguishing between types of evidence relating to behavioral tendencies, its reasoning does not purport to address how it would treat evidence that could be characterized as both admissible and inadmissible. Id. ¶ 21.
¶ 14 Our fidelity to the Mott standard also conforms with our customary criteria in assessing the admissibility of evidence. It is a long-standing rule that "[e]vidence may be clearly inadmissible for one purpose yet the same evidence may be proper and admissible for some other legitimate purpose." Leigh v. Swartz , 74 Ariz. 108, 114, 245 P.2d 262 (1952). And, our courts have long depended on this logic in assessing the admissibility of other crimes, wrongs, or acts evidence, see Ariz. R. Evid. 404(b) (such evidence inadmissible to show criminal propensity but admissible for other purposes), and out-of-court statements. See Ariz. R. Evid. 801 (c)(2) (out-of-court statement not hearsay unless offered for "the truth of the matter asserted").
¶ 15 For this reason, trial courts have effective and familiar tools to ensure evidence is considered exclusively for the proper purpose. Indeed, when admitting evidence in this situation, a trial court must give a limiting instruction if one is timely requested. See Ariz. R. Evid. 105 ; see also State v. Coghill , 216 Ariz. 578, ¶ 13, 169 P.3d 942 (App. 2007). The court may also direct counsel in advance of trial to confine their examinations and arguments to avoid encouraging the improper use of such evidence. Finally, in cases where the probative value of any such evidence is substantially outweighed by the danger of improper use, a trial court may properly exclude the evidence altogether pursuant to Rule 403, Ariz. R. Evid. Mott , 187 Ariz. at 545, 931 P.2d at 1055 ("Unfair prejudice results if the evidence has an undue tendency to suggest [a] decision on an improper basis...."); see also State v. Salamanca , 233 Ariz. 292, ¶ 17, 311 P.3d 1105 (App. 2013) (trial court enjoys "broad discretion" in Rule 403 analysis).[2]
¶ 16 Here, the brain-damage evidence was admissible to the extent relevant to corroborate Malone's claim that he possessed a character trait for impulsivity. It was not admissible to support a claim that he was incapable of reflection. It should therefore have been admitted for its proper purpose subject to a limiting instruction, if requested.[3]
*597 ¶ 17 However, we will not reverse a conviction if the state can show "beyond a reasonable doubt that the error did not contribute to or affect the verdict." State v. Henderson , 210 Ariz. 561, ¶ 18, 115 P.3d 601 (2005). "When reviewing whether a trial court's improper preclusion of a defense witness's testimony is harmless, we look to see ... whether the witness's testimony would have been merely cumulative of other evidence in the case." State v. Carlos , 199 Ariz. 273, ¶ 24, 17 P.3d 118 (App. 2001).
¶ 18 Although Malone was not permitted to present expert testimony regarding his brain damage, he did introduce extensive evidence of his character trait for impulsivity. Malone's mother testified at length about his lifelong impulsive behavior and inability to cope with his emotions. She described several specific instances in Malone's life when he demonstrated impulsive behavior and a tendency to overreact to emotional situations. She also testified that Malone had received counseling to help him learn self-control as a young child, and had attended residential programs to help deal with his behavior as a teenager, but had never shown any improvement.
¶ 19 Malone was also permitted to introduce extensive expert testimony regarding his character trait for impulsivity. A clinical psychologist with certifications in neuropsychology and forensic psychology testified that he had evaluated Malone and concluded Malone "clearly does have a character trait for impulsivity." He explained what it means to have an impulsive personality generally and discussed his specific evaluation of Malone. He described some of the various types of objective tests he used to come to his conclusion, why the tests were reliable, how the tests were administered, and why they demonstrated Malone's impulsivity.
¶ 20 The trial court only precluded Malone's expert from testifying about "Malone's impulsivity ... based on findings of brain damage or brain injury." Thus, he was not allowed to testify about his conclusion that the "[r]esults of [Malone's] comprehensive neuropsychological assessment [were] consistent with significant and permanent diffuse brain damage." Because of that limitation, the expert was not allowed to discuss his past work in "traumatic brain injury rehabilitation" or "functioning in general." One specific test he administered, the "Delis-Kaplan Executive Functioning" test, had to be referred to as "Delis-Kaplan." The expert was also prevented from discussing certain information about the results of certain tests, for example, that Malone "performed at a low level or something to that effect."
¶ 21 "The significance of evidence erroneously admitted or excluded may depend on whether it is more of the same type of evidence properly admitted in the case." State v. Romero , 240 Ariz. 503, ¶ 17, 381 P.3d 297 (App. 2016). Here, the conclusion of Malone's expert that Malone suffered brain damage was based entirely on his evaluation of Malone and Malone's performance on tests-almost all of which the expert was allowed to testify about. The expert's conclusion that Malone suffered brain damage, while relevant and admissible to demonstrate that Malone had an ingrained character trait for impulsivity, did not add anything substantially new or different to the volume of similar evidence already presented.
¶ 22 Our conclusion that the exclusion of this evidence was harmless is further bolstered by the fact that the state never challenged that Malone had a character trait for impulsivity. See id. ¶ 20 (arguments of prosecutor relevant to harmfulness of error). On cross-examination, the state did not refute the expert's conclusions that Malone had a character trait for impulsivity or the validity of his assessments, and instead focused on the difference between reflexive actions and impulsive actions. In closing argument, the state highlighted all of the evidence that suggested Malone had acted with premeditation, but it did not claim Malone was not an impulsive person. Because the evidence of brain damage was mostly cumulative, and *598 because the conclusion that Malone was impulsive was not challenged, we conclude any error in excluding this evidence was harmless.
Hypothetical Questions
¶ 23 In a related issue, Malone claims the trial court erroneously limited his ability to ask hypothetical questions of his expert witness. Malone was allowed to raise one hypothetical concerning whether an incident of Malone's behavior as a child, as testified to by Malone's mother, demonstrated a character trait for impulsivity. The court then intervened, stating that the line of questioning was not "an admissible continuing area."
¶ 24 Whether or not this limitation was error, and if so, what effect any error had on the trial, we cannot say, because Malone did not make an offer of proof. See Ariz. R. Evid. 103(a)(2) ; State v. Dixon , 226 Ariz. 545, ¶ 44, 250 P.3d 1174 (2011). Because the record does not demonstrate what other hypothetical questions Malone would have asked, nor what the expert would have said in response, we cannot say the trial court abused its discretion. See State v. Hernandez , 232 Ariz. 313, ¶¶ 42-44, 305 P.3d 378 (2013) ("An offer of proof is critical because it permits 'the trial judge to reevaluate his decision in light of the actual evidence to be offered, ... and to permit the reviewing court to determine if the exclusion affected the substantial rights of the party offering it.' "), quoting Fortunato v. Ford Motor Co. , 464 F.2d 962, 967 (2d Cir. 1972) (omission in Hernandez ).
Jury Instruction/Prosecutorial Misconduct
¶ 25 Malone next claims the court erroneously denied his requested jury instruction concerning impulsivity. During closing argument, the prosecutor, in his discussion of the meaning of premeditation, stated:
Premeditation, intended to kill or knew he would kill another person, and that after forming that intent or knowledge, reflected. Does it say you have to think carefully anywhere in there? No. Does it say anything about impulsivity in there? The answer is no. All you have to do is think about it. You don't have to think about it carefully or thoughtfully or look into the consequences; otherwise, the legislature and the courts would have said that in the instruction.
Immediately after the prosecutor finished his argument, Malone objected to this statement and asked the trial court to provide an instruction on impulsivity. "We review a trial court's denial of a requested jury instruction for an abuse of discretion." State v. Johnson , 212 Ariz. 425, ¶ 15, 133 P.3d 735 (2006).
¶ 26 "[W]hen the substance of a proposed instruction is adequately covered by other instructions, the trial court is not required to give it." State v. Hoskins , 199 Ariz. 127, ¶ 75, 14 P.3d 997 (2000). Even assuming arguendo that Malone's proposed instruction was a correct statement of the law and was not a comment on the evidence, the court did not err in refusing to give it so long as the jury instructions that were given adequately covered the substance of the proposed instruction. See State v. Tarr , 235 Ariz. 288, ¶¶ 13-14, 331 P.3d 423 (App. 2014). Here, the trial court instructed the jury on the state's burden to prove each element of the crime and on the definition of premeditation. It "was not necessary to emphasize a particular aspect of the case in [Malone]'s language." State v. Montijo , 160 Ariz. 576, 578, 774 P.2d 1366, 1368 (App. 1989). Accordingly, the court did not err in refusing Malone's requested instruction.
¶ 27 In his motion for new trial, Malone claimed the prosecutor's comments about impulsivity constituted prosecutorial misconduct. Malone also highlighted another statement by the prosecutor, made during the discussion of premeditation: "Did I think about it with all the consequences? Oh, my God, no. But it's not part of anything in the instructions that you must follow, not a thing, not a thing. Decided to kill her, he killed her. That's it. That's premeditation. There's nothing more." Because Malone did not object to either of these statements as prosecutorial misconduct during closing arguments, and raised that claim for the first time in his motion for new trial, our review is limited to fundamental, prejudicial error.
*599 State v. Phillips , 202 Ariz. 427, ¶¶ 45, 48, 46 P.3d 1048 (2002), superseded by statute on other grounds as recognized by State v. Carlson , 237 Ariz. 381, ¶ 46, 351 P.3d 1079 (2015). "To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." State v. Burns , 237 Ariz. 1, ¶ 146, 344 P.3d 303 (2015), quoting State v. Hughes , 193 Ariz. 72, ¶ 26, 969 P.2d 1184 (1998).
¶ 28 We agree that the prosecutor's statement of "Decided to kill her, he killed her. That's it. That's premeditation" was a gross misstatement of the law. " 'Premeditation' means that the defendant intended to kill another human being ... and that after forming that intent ... reflected on the decision before killing." State v. Thompson , 204 Ariz. 471, ¶ 32, 65 P.3d 420 (2003). The decision to kill is not sufficient to show premeditation. Id. Given that the central issue in the case was whether or not Malone acted with premeditation, this misstatement of the law was not a triviality.
¶ 29 However, a misstatement of law during closing argument may be cured if the prosecutor corrects the misstatement and the trial court provides a correct jury instruction. State v. Patterson , 230 Ariz. 270, ¶ 25, 283 P.3d 1 (2012). Here, the prosecutor later stated, "It's this reflection, that is thinking about something, premeditated, thinking about it before ... that distinguishes first-degree murder from second-degree murder." This clarified that reflection required something more than simply making the decision to kill. The trial court also provided a correct jury instruction on premeditation. The misstatement of the law was therefore cured. Id.
¶ 30 As to the statement regarding impulsivity, in context, it appears the prosecutor was merely reminding the jury that reflection does not require that the defendant think carefully about his decision to kill, only that he does in fact think about it.[4] Malone has not met his burden of demonstrating fundamental, prejudicial error. See Henderson , 210 Ariz. 561, ¶ 20, 115 P.3d 601.[5]
Hearsay
¶ 31 Malone next claims the trial court erred in admitting "hearsay evidence about [Malone]'s purported 'threats' to the victim before the killing." "We review admissions of evidence under exceptions to the rule against hearsay for abuse of discretion." State v. Tucker , 205 Ariz. 157, ¶ 41, 68 P.3d 110 (2003).
¶ 32 The victim's sister, E.S., testified that while the two were driving to Malone's house, A.S., talking to Malone on the phone, said, "[S]o you're going to keep threatening me." A statement that is a "[p]resent sense impression," that is, "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it," is excepted from the rule against hearsay. Ariz. R. Evid. 803(1). In Tucker , the trial court admitted a statement from the victim's cousin that, two days before the murder, the victim had told her about an argument she had just had with the defendant. 205 Ariz. 157, ¶¶ 4-5, 38, 68 P.3d 110. Our supreme court found this admissible as a present-sense impression, as it described an event, that event was perceived by the declarant, and the statement was made shortly after the event occurred. Id. ¶¶ 43-47. The situation here is nearly identical. A.S. was describing an event that she perceived, immediately after the event occurred. Accordingly, the trial court did not abuse its discretion in admitting this testimony.
*600 Voluntariness of Statements
¶ 33 Malone's final assertion of error is that his statements to police should not have been admitted because they were not voluntary. "We will not overturn a trial court's determination of voluntariness absent clear error." State v. Brown, 233 Ariz. 153, ¶ 7, 310 P.3d 29 (App. 2013).
¶ 34 Malone claims that because he suffered from brain damage, he might not have understood what he was saying to police, or what he was saying might not have been an accurate recollection of events. "To find a confession involuntary, we must find both coercive police behavior and a causal relation between the coercive behavior and the defendant's overborne will." State v. Boggs , 218 Ariz. 325, ¶ 44, 185 P.3d 111 (2008), citing Colorado v. Connelly , 479 U.S. 157, 165-66, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). Malone has not pointed to any evidence suggesting coercive behavior on the part of the police. Although he suggests that Connelly was incorrectly decided, its reasoning has been adopted by our supreme court, and we have no authority to modify or disregard it. State v. Smyers , 207 Ariz. 314, n.4, 86 P.3d 370 (2004).
¶ 35 In addition to the lack of coercive behavior on the part of the police, we note that the report prepared by Malone's expert does not suggest that Malone has any difficulty with understanding what is happening around him or correctly recollecting events. Nothing about Malone's conduct during the interview suggests that he was confused or unaware of what was happening. Malone has not demonstrated that the trial court committed clear error in admitting his statements.
Disposition
¶ 36 For the reasons outlined above, we affirm Malone's convictions and sentences.

Indeed, such physiological evidence of impulsivity might, in other cases, be especially relevant to rebut a prosecutor's assertion that a defendant is malingering or that his witnesses' accounts are biased in his favor. And, we question the logic of allowing defendants to demonstrate a character trait of impulsivity in the abstract or anecdotally while categorically depriving them of objective and scientifically reliable evidence of it.

We do not constrain trial courts from excluding such evidence for any of the reasons permitted by Rule 403, which are "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Nor does our disposition of this matter require us to decide whether the trial court could have used Rule 403 to exclude the evidence at issue.

Our dissenting colleague fears that our reasoning will open the floodgates to specious character trait defenses of all varieties, resulting in the "release ... [of] many dangerous criminals." He overlooks that our supreme court has only allowed evidence of the character trait of impulsivity to rebut the premeditation element in first-degree murder cases. Therefore, our reasoning here will inform only whether a concededly dangerous person will be convicted of first- or second-degree murder.

The prosecutor also made some comments suggesting that a person who acts impulsively has still acted with premeditation. These comments contradict our supreme court's assertions that evidence of impulsivity is relevant to show that a defendant did not act with premeditation. See Leteve , 237 Ariz. 516, ¶ 23, 354 P.3d 393 ; Christensen , 129 Ariz. at 35, 628 P.2d at 583. But these comments were not made to the jury, and there is no possibility "that the jurors were in fact influenced by the remarks." State v. Newell , 212 Ariz. 389, ¶ 60, 132 P.3d 833 (2006).

Malone also argues the trial court erred in denying his motion for new trial based on the preclusion of the evidence of brain damage and prosecutorial misconduct. Because we have found no reversible error as to these issues, we likewise find no reversible error in the denial of Malone's motion for new trial.