IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————

**STATE OF ARIZONA**,
*Appellee*,

*v.*

**STEPHEN JAY MALONE JR.**,
*Appellant*.

————

No. CR-18-0431-PR
Filed July 17, 2019

————

Appeal from the Superior Court in Pima County
The Honorable Richard D. Nichols, Judge
No. CR20132518-001
**AFFIRMED**

Opinion of the Court of Appeals, Division Two
245 Ariz. 103 (App. 2018)
**VACATED**

————

COUNSEL:

Mark Brnovich, Arizona Attorney General, O.H. Skinner, Solicitor General, Joseph T. Maziarz, Chief Counsel, Criminal Appeals Section, Michael T. O'Toole (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

James L. Fullin, Pima County Legal Defender, Jeffrey Kautenburger (argued), Assistant Legal Defender, Pima County Legal Defender's Office, Tucson, Attorneys for Stephen Jay Malone Jr.

David J. Euchner, Tucson, Attorney for Amicus Curiae Arizona Attorneys for Criminal Justice

_____

JUSTICE TIMMER authored the opinion of the Court, in which VICE CHIEF JUSTICE BRUTINEL and JUSTICES BOLICK, GOULD, LOPEZ, and PELANDER (RETIRED) joined. CHIEF JUSTICE BALES dissented in part and concurred in the judgment.

JUSTICE TIMMER, opinion of the Court:

¶1        Although a defendant cannot use evidence of a mental disease or defect to show he did not form a crime's requisite mental state (mens rea), *see State v. Mott*, 187 Ariz. 536, 541 (1997); *State v. Schantz*, 98 Ariz. 200, 212–13 (1965), he may use evidence of a character trait for impulsivity to cast doubt on the existence of premeditation, *see State v. Christensen*, 129 Ariz. 32, 35 (1981), which forms part of the mens rea for first degree murder under A.R.S. § 13-1105(A)(1), *see State v. Boyston*, 231 Ariz. 539, 549 ¶ 50 (2013). Here, we decide whether a defendant who introduces expert evidence of a character trait for impulsivity to challenge premeditation may also introduce evidence of brain damage to corroborate the existence of that trait. We hold he cannot.

## BACKGROUND

¶2        Stephen Jay Malone Jr. and A.S. lived together in a tumultuous romantic relationship. On June 9, 2013, A.S. left Malone, moving from their home with their three children. Two evenings later, A.S., along with her sister, E.S., and two of the children, drove to the home to return a gift to Malone. On the way, A.S. spoke to Malone by phone and told him that despite his threats, she was leaving him. When A.S. arrived, Malone came up to the car, took the returned gift, and asked her to stay so his mother, who was in the house, could see the children. A.S. refused and drove away; Malone quickly followed in another car. After a five-to-six-minute chase, during which Malone blocked A.S.'s car twice, Malone jumped from his car and fired multiple gunshots into A.S.'s car, killing A.S. and injuring E.S.

¶3        The State indicted Malone on several charges, including premeditated first degree murder, *see* § 13-1105(A)(1), the only charge at issue here. Before trial, the State moved to preclude expert testimony from psychologist James Sullivan, Ph.D, that Malone's performance on neuropsychological assessment tests was "consistent with significant and

permanent diffuse brain damage," meaning Malone was "more likely to have a character trait for impulsivity." (Dr. Sullivan did not obtain an MRI scan or like evidence to bolster his assessment that Malone had brain damage.) While acknowledging that *Christensen* permitted Dr. Sullivan to testify that Malone had a character trait for impulsivity, the State argued that *Mott* precluded evidence that brain damage made the existence of this trait more likely. Over defense objection, the trial court granted the motion and precluded Dr. Sullivan from offering an opinion at trial regarding brain damage.

¶4        At trial, Malone rebutted the State's allegation that he premeditated A.S.'s murder by introducing evidence suggesting he had acted impulsively. To that end, Dr. Sullivan testified that, based on his observations and psychological tests, Malone had a character trait for impulsivity. Dr. Sullivan explained that people with this character trait are compromised in their ability to think through the consequences of their actions before acting, although they are capable of doing so. The State did not contest that Malone had a character trait for impulsivity but nevertheless maintained he premeditated A.S.'s murder. The jury agreed and found Malone guilty as charged.

¶5        In a split decision, the court of appeals concluded the trial court erred by precluding Dr. Sullivan's testimony concerning brain damage. *State v. Malone*, 245 Ariz. 103, 107 ¶ 16 (App. 2018). The court nevertheless found the error harmless and therefore affirmed. *Id*. at 108–09 ¶ 22.

¶6        We granted Malone's petition for review (challenging harmless error) and the State's cross-petition for review (challenging error) because they involve a recurring issue of statewide importance. We have jurisdiction pursuant to article 6, section 5 of the Arizona Constitution.

**DISCUSSION**

**I.**

¶7        We review the trial court's preclusion of Dr. Sullivan's brain-damage testimony for an abuse of discretion. *See State v. Leteve*, 237 Ariz. 516, 524 ¶ 18 (2015). "An error of law committed in reaching a discretionary conclusion may, however, constitute an abuse of discretion." *State v. Wall*, 212 Ariz. 1, 3 ¶ 12 (2006).

## II.

¶8        Before addressing the admissibility of Dr. Sullivan's brain-damage testimony, we set forth general legal principles underlying the issue. First, apart from insanity, Arizona does not permit a defendant to introduce evidence of a mental disease or defect as either an affirmative defense or to negate the mens rea element of a crime. *See Mott*, 187 Ariz. at 540–41; *Schantz*, 98 Ariz. at 212; *see also* A.R.S. § 13-502(A) ("A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong."). Thus, for example, in *Mott* this Court held that the trial court properly excluded evidence that the defendant suffered from battered-woman syndrome because it was offered to negate the mens rea element for child abuse (knowledge or intent). 187 Ariz. at 539, 544–45. And in *Schantz* we held that the trial court properly refused a jury instruction that would have permitted the jury to consider expert evidence that the defendant killed his wife "without his deliberate volitional conscious awareness" to contest the mens rea element for second degree murder (malice aforethought). 98 Ariz. at 204–06, 213.

¶9        Using mental disease or defect evidence to refute the mens rea element of a crime is commonly referred to as a "diminished capacity" or "diminished responsibility" defense. *Mott*, 187 Ariz. at 540; *see Leteve*, 237 Ariz. at 524 ¶ 20. Such evidence does not provide a complete defense to a crime or excuse it but "establish[es], by negating the requisite intent for a higher degree of the offense, that in fact a lesser degree of the offense was committed." *McCarthy v. State*, 372 A.2d 180, 182 (Del. 1977) (quoting C.T. Drechsler, Annotation, *Mental or Emotional Condition as Diminishing Responsibility for Crime*, 22 A.L.R. 3d 1228, 1238 (1968)). As mentioned, Arizona does not permit this defense. *See Mott*, 187 Ariz. at 540–41; *Schantz*, 98 Ariz. at 212.

¶10        Second, evidence of a defendant's behavioral tendencies is not diminished capacity evidence and may be admitted to challenge the mens rea of premeditation for a first degree murder charge. *See Christensen*, 129 Ariz. at 35–36. The defendant in *Christensen* was charged with premeditated first degree murder and sought to elicit a psychiatrist's testimony that, based on interviews and diagnostic testing results, the defendant "had difficulty dealing with stress and in stressful situations his actions were more reflexive than reflective." *Id.* at 34. The trial court precluded the testimony as diminished capacity evidence. *Id.* This Court

reversed, reasoning that the testimony evinced a character trait that "tend[ed] to establish that [the defendant] acted impulsively" and would have assisted jurors in determining whether the defendant acted with premeditation. *Id.* at 35; *see also* Ariz. R. Evid. 404(a)(1) (authorizing admission of character trait evidence offered by an accused); Ariz. R. Evid. 405(a) (stating that character trait evidence can be offered as an opinion). The Court cautioned, however, that an expert witness could not opine as to whether a defendant was acting reflectively or reflexively at the time of the murder. *Christensen*, 129 Ariz. at 35–36.

¶11 The United States Supreme Court in *Clark v. Arizona*, 548 U.S. 735, 757 (2006), coined the term "observation evidence" to describe the type of character trait evidence permitted in *Christensen*. *See also State v. Richter*, 245 Ariz. 1, 8 ¶ 33 (2018); *Leteve*, 237 Ariz. at 401 ¶ 21. "Observation evidence" is a slight misnomer, however, as the psychiatrist's opinion in *Christensen*, like Dr. Sullivan's proffered brain-damage testimony here, depended on results from diagnostic tests administered to the defendant as well as the psychiatrist's personal observations of him. *See Christensen*, 129 Ariz. at 34. A more accurate term for the evidence deemed admissible in *Christensen* is "behavioral-tendency evidence," which is admissible to show a character trait. *See Mott*, 187 Ariz. at 544 (describing *Christensen* as involving "evidence about [the defendant's] behavioral tendencies"); *see also* Ariz. R. Evid. 404(a)(1) (permitting evidence of an accused's pertinent character trait).

## III.

### A.

¶12 Turning to this case, the dispute is whether Dr. Sullivan's proffered brain-damage testimony was inadmissible diminished capacity evidence under *Schantz* and *Mott*, as the trial court ruled, or admissible behavioral-tendency evidence under *Christensen*, as the court of appeals concluded. We quickly reject Malone's assertion that *Mott* could not apply here because it only considered psychological conditions, not brain damage, as mental diseases or defects underlying prohibited diminished capacity defenses. Nothing in *Mott* draws this fine distinction. Significantly, in overruling *State v. Gonzales*, 140 Ariz. 349 (1984), which had approved use of expert testimony that a defendant's "low intelligence and probable organic brain damage affected his ability to reason" and made him unable to form the mens rea for rape, *Mott* necessarily considered brain damage as a mental defect by characterizing the expert's testimony in

*Gonzales* as diminished capacity evidence. *Mott*, 187 Ariz. at 544. Dr. Sullivan's precluded brain-damage testimony constitutes the type of mental-defect evidence addressed by *Mott*.

¶13 Malone next argues that mental disease or defect evidence is only inadmissible under *Mott* if that disease or defect rendered the defendant entirely incapable of forming the requisite mens rea. Thus, because Dr. Sullivan's proffered brain-damage testimony purportedly would have shown only that Malone was impulsive and therefore less likely to premeditate but not incapable of doing so, *Mott* is inapplicable. The State counters that *Mott* precluded all mental disease or defect evidence unless used to show legal insanity under § 13-502, meaning the brain-damage evidence here was properly precluded.

¶14 We do not view *Mott* as precluding only mental disease or defect evidence that renders a defendant incapable of forming mens rea. Malone relies on language in *Mott* that, in isolation, supports his interpretation. *See Mott*, 187 Ariz. at 544 (distinguishing *Christensen* by noting that the evidence there "was not that [Christensen] was *incapable*, by reason of a mental defect, of premeditating or deliberating but that, because he had a tendency to act impulsively, he did not premeditate the homicide. Because he was not offering evidence of his diminished capacity, but only of a character trait relating to his lack of premeditation, the defendant was not precluded from presenting the expert testimony."). But the disputed evidence in *Mott* was expert testimony that the "defendant was not capable of forming the requisite mental state of knowledge or intent," so it is not surprising the Court focused on incapability when distinguishing *Christensen*. *See id.* at 540.

¶15 Elsewhere in *Mott*, the Court indicated that prohibited mental disease or defect evidence included anything affecting a defendant's actions, excepting evidence of legal insanity. *See id.* at 540, 544 (describing prohibited diminished capacity evidence as "negat[ing] the mens rea" and concluding that evidence "affect[ing] the defendant's capacity" to decide whether to get medical help for her child is inadmissible as diminished capacity evidence (emphasis removed)). And significantly, *Mott* overruled *Gonzales*, which had concluded that evidence of impaired cognitive functioning that *affected* the defendant's judgment was relevant to whether he acted with the requisite mens rea and therefore admissible. *See Mott*, 187 Ariz. at 544; *Gonzales*, 140 Ariz. at 350, 352–53.

**¶16**         This Court's pre-*Mott* decisions are in accord with our view. *See, e.g.*, *State v. Ramos*, 133 Ariz. 4, 6 (1982) ("Psychiatric testimony to negate specific intent has consistently been excluded."); *State v. Briggs*, 112 Ariz. 379, 382 (1975) ("Arizona does not permit psychiatric evidence of a mental disease or defect negativing a state of mind."); *State v. Malumphy*, 105 Ariz. 200, 202 (1969) (concluding that the trial court properly "refus[ed] to instruct the jury that it could consider evidence of defendant's mental condition in determining whether defendant, in fact, entertained premeditation and deliberation" as that instruction "embodies the precept commonly referred to as the doctrine of 'diminished responsibility,'" which Arizona rejects); *Schantz*, 98 Ariz. at 207–08 (describing diminished responsibility evidence as permitting a jury to "consider defects in the volitional processes to determine the lack of deliberation and premeditation" or "the lack of malice aforethought").

**¶17**         *Mott*'s focus on the adoption of our criminal code further illuminates the Court's view that prohibited diminished capacity evidence includes a mental disease or defect that reduces the likelihood that a defendant formed the requisite mens rea.  The Court noted that the legislature "declined to adopt the defense of diminished capacity" set forth in the 1962 version of the Model Penal Code ("MPC") § 4.02(1): "Evidence that the defendant suffered from a mental disease or defect is admissible whenever it is relevant to prove that the defendant did or did not have a state of mind that is an element of the offense."  187 Ariz. at 540; *see also Schantz*, 98 Ariz. at 212–13 (declining to adopt then-draft MPC § 4.02(1) "piecemeal" and deferring to the legislature whether to adopt or reject it as part of article 4 of the draft MPC).  According to the Court, "[t]his section was written in recognition of the existence of degrees of mental disease or defect that fall short of that required for invoking the defense of irresponsibility [legal insanity], but that may be put in evidence as tending to show that the defendant lacked the specific *mens rea* required for the commission of the offense charged."  *Mott*, 187 Ariz. at 540 (internal quotation marks omitted) (quoting MPC and Commentaries § 4.02(1) cmt. 2 (1985)).  By omitting § 4.02(1) from our code, the Court reasoned, the legislature rejected "use of psychological testimony to challenge the *mens rea* element of a crime."  *Id.*  In other words, mental disease or defect evidence falling short of demonstrating legal insanity cannot be admitted to challenge the mens rea element of a charged offense.  *See Clark*, 548 U.S. at 762 ("[W]e understand that *Mott* is meant to confine to the insanity defense any consideration of characteristic behavior associated with mental disease."); *Leteve*, 237 Ariz. at 524 ¶ 20 (reaffirming that diminished capacity evidence cannot be used to negate mens rea and describing such evidence

as a "mental disorder short of insanity" (citing *Mott*, 187 Ariz. at 541)); *State v. Jacobson*, 244 Ariz. 187, 193 ¶ 21 (App. 2017) (stating expert evidence that hormonal changes "could affect planning, thinking, mental state, judgment, insight, perception and memory" was diminished capacity evidence prohibited by *Mott*).

¶18 The court of appeals acknowledged that Dr. Sullivan's proffered brain-damage testimony was diminished capacity evidence. *See Malone*, 245 Ariz. at 106 ¶¶ 7, 9. But the court viewed *Mott*'s differentiation of *Christensen* as authorizing admission of mental disease or defect evidence for the purpose of showing a behavioral tendency that negates mens rea. *Id.* at 106–07 ¶¶ 10–12. Because Dr. Sullivan's test results "were offered to demonstrate a brain condition that rendered it less likely" that Malone premeditated the murder, the evidence was deemed admissible "to corroborate the defendant's claims that he had a character trait of impulsivity." *Id.* ¶ 11. The court noted that the trial court could have facilitated proper use of the evidence with a limiting instruction or other measures. *See id.* at 107 ¶ 15.

¶19 We reject the court of appeals' purpose-oriented standard for admitting mental disease or defect evidence to negate mens rea. As previously discussed, *see supra* ¶ 17, Arizona has not adopted MPC § 4.02(1), which would have permitted Dr. Sullivan's brain-damage testimony as relevant to the existence of mens rea. Consequently, mental disease or defect evidence, whether introduced to show a defendant's inability to form mens rea or a likelihood he failed to do so, cannot be used to negate mens rea.

¶20 We are not persuaded to reach a different result because the proffered brain-damage testimony corroborates the existence of a behavioral tendency. We agree with the court of appeals' dissent that, regardless of the corroborating character of this evidence, it was inescapably offered to refute premeditation and is therefore inadmissible under *Schantz* and *Mott*. *Malone*, 245 Ariz. at 111 ¶ 38 (Brearcliffe, J., concurring in part and dissenting in part). To conclude otherwise would circumvent Arizona's longstanding jurisprudence, including those cases, by permitting defendants to introduce evidence of a behavioral tendency and then "corroborating" its existence by providing mental disease or defect evidence to explain the cause for that behavior. For example, under this standard, the expert in *Mott* could have first testified that the defendant had a character trait of not sensing danger (part of the excluded evidence) and then corroborated it with evidence of battered woman syndrome. *See*

*Mott*, 187 Ariz. at 539–40. Although behavioral-tendency evidence is permissible to negate mens rea, linking that behavior to a mental disease or defect, whether directly or under the guise of corroboration, is impermissible. *Cf. Richter*, 245 Ariz. at 9 ¶ 36 (stating that an expert's opinion cannot be used "to serve as a mere conduit for otherwise inadmissible testimony"). (The prosecution here did not contest that Malone has a character trait for impulsivity. Thus, the parties have not addressed whether the defense can introduce mental disease or defect evidence to corroborate behavioral-tendency evidence when the prosecution challenges the latter. We leave that issue for a future case.)

¶21 In sum, mental disease or defect evidence cannot be admitted to show that a defendant was less likely to have formed the mens rea element of a crime even if that evidence corroborates behavioral-tendency evidence. Here, the trial court correctly precluded Dr. Sullivan from testifying that Malone suffered from brain damage even if that impairment made it more likely that he had a character trait for impulsivity.

**B.**

¶22 Although neither the parties nor the court of appeals challenged the oft-cited statements in *Schantz* and *Mott* that evidence of a mental disease or defect cannot be admitted to negate mens rea, our dissenting colleague does. He asserts that *Schantz*'s rejection of then-draft MPC § 4.02(1), which makes mental disease or defect evidence admissible if relevant to whether a defendant acted with the requisite mens rea, was dicta that *Mott* mistakenly repeated. *See infra* ¶¶ 32, 36. We disagree. The defendant in *Schantz* raised the issue to this Court by arguing that then-draft MPC § 4.02(1) supported the propriety of his requested jury instruction, and this Court thoroughly discussed and resolved the issue by declining to adopt that provision. 98 Ariz. at 208–13; *see also Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 81 (1981) (defining dictum as "a court's statement on a question not necessarily involved in the case"). And even if *Schantz*'s rejection of then-draft MPC § 4.02(1) was dicta, this Court has followed it in other cases, making it precedential. *See, e.g.*, *Mott*, 187 Ariz. at 541 ("[T]his court considered and rejected the defense of diminished capacity in *State v. Schantz*." (Citation omitted.)); *Malumphy*, 105 Ariz. at 202 ("We rejected the doctrine [of diminished responsibility] in *State v. Schantz* after an extensive discussion of the subject." (Citation omitted.)).

¶23 The dissent also argues that *Schantz* and *Mott* wrongly conflated the issues of whether Arizona recognizes a diminished responsibility defense (excusing criminal acts) with whether mental disease

or defect evidence is admissible to challenge the prosecution's proof of mens rea. *See infra* ¶¶ 34, 38. We agree that the substantive viability of a diminished responsibility defense is different from the evidentiary admissibility of diminished responsibility evidence to refute mens rea. But for our purposes, this distinction is meaningless. As previously explained, this Court in *Schantz, Mott*, and other cases concluded that mental disease or defect evidence cannot be used to refute mens rea. *See supra* ¶¶ 15–17.

**¶24** Finally, the dissent asserts that *Mott* incorrectly reasoned that the legislature's refusal to adopt MPC § 4.02(1) evidences its rejection of that provision. *See infra* ¶ 39 ("The legislature fails to do things for many reasons."). The dissent then implies that any such rejection would violate separation of powers as this Court is empowered by the Arizona Constitution to develop rules of evidence. *Id.* This implication is incorrect.

**¶25** First, legislative history reflects that the legislature considered and rejected the evidentiary rule set forth in MPC § 4.02(1). In 1983, the legislature reformed the insanity defense in the wake of two high-profile acquittals in murder cases. *See* Renée Melançon, Note, *Arizona's Insane Response to Insanity*, 40 Ariz. L. Rev. 287, 296–97 (1998). As part of that effort, the Senate Judiciary Interim Subcommittee on the Insanity Defense recommended changes. *Id.* at 296. The subcommittee identified two mutually exclusive approaches to improving the insanity defense, including the "mens rea approach," which reflected MPC § 4.02(1):

> This approach provides that mental disease or defect does not constitute a <u>separate</u> defense to a criminal charge, but provides for the introduction of expert evidence on the defendant's ability or inability to form the culpable mental state required to be convicted of the crime. Thus, the focus is on the question of whether or not the defendant acted with the requisite culpable mental state . . . .

*See Final Report of the Senate Judiciary Interim Subcommittee on the Insanity Defense*, 13, 17 (1982) (hereinafter "Report"). The subcommittee remarked that this approach had been adopted in Idaho and Montana and, as noted in the legislative history for the Insanity Defense Reform Act of 1984, Pub. L. 98–473, 98 Stat. 2057 (1984) (codified as amended at 18 U.S.C. § 17), at the federal level.[1] *Report* at 17. The legislature quite clearly, albeit implicitly,

---

[1] Idaho and Montana, unlike Arizona, currently follow the MPC § 4.02(1) approach. *See* Idaho Code § 18-207 (providing that "[m]ental condition

rejected the mens rea approach by adopting the alternative approach currently set forth in § 13-502(A).

**¶26** Second, although MPC § 4.02(1) is an evidentiary rule within this Court's authority to enact, the dissent overlooks that we have declined to do so in the fifty-four years since *Schantz*. There, the Court expressed "hesitan[ce]" about adopting then-draft MPC § 4.02(1) without the legislature first adopting the entirety of MPC article 4 which, among other things, contained involuntary commitment provisions:

> If we accept defendant's proposal and decide that psychiatric evidence of a mental disease or defect is relevant to prove that a defendant did not have a state of mind which is an element of the offense, the jury would be put to the compulsion of releasing upon society many dangerous criminals who obviously should be placed under confinement.

98 Ariz. at 212–13. The *Mott* Court similarly declined to adopt MPC § 4.02(1) after considering legislative policy. 187 Ariz. at 541 ("Because the legislature has not provided for a diminished capacity defense, we have since consistently refused to allow psychiatric testimony to negate specific intent."); *see also State v. Laffoon*, 125 Ariz. 484, 486 (1980) ("Since the legislature has not seen fit to provide for a defense of diminished responsibility, we have consistently declined to allow psychiatric testimony to negate specific intent.").

**¶27** Although this Court is constitutionally empowered to promulgate evidentiary rules, we can elect to defer to legislative policy. *See Readenour v. Mario Power Shovel, a Div. of Dresser Indus., Inc.*, 149 Ariz. 442, 446 (1986) ("Under our constitutional rule-making power we cannot let the legislature define what is relevant; however, when it is appropriate we may defer to legislative decisions regarding the use or exclusion of relevant evidence to promote substantive goals of public policy such as accident prevention."). For decades, this Court has deferred to perceived legislative

---

shall not be a defense to any charge of criminal conduct" but "[n]othing herein is intended to prevent the admission of expert evidence on the issue of any state of mind which is an element of the offense, subject to the rules of evidence"); Mont. Code. Ann. § 46-14-102 ("Evidence that the defendant suffered from a mental disease or disorder or developmental disability is admissible to prove that the defendant did or did not have a state of mind that is an element of the offense.").

11

policy to not permit the admission of mental disease or defect evidence to refute mens rea.  Unlike the dissent, we decline to reexamine those cases here when the parties have failed to brief or argue the issue, and any change would not result in reversible error.  *See, e.g.*, *State ex rel. Brnovich v. City of Tucson*, 242 Ariz. 588, 599 ¶ 45 (2017) ("We generally do not reach out to decide important constitutional issues or to upset established precedent when no party has raised or argued such issues.").

## CONCLUSION

**¶28**        We vacate the court of appeals' opinion and affirm Malone's convictions and sentences.

BALES, C.J., dissenting in part and concurring in the judgment.

¶29          I agree with the court of appeals that, based on our decision in *State v. Christensen*, 129 Ariz. 32 (1981), and Arizona Rule of Evidence 404, a defendant may offer evidence of brain damage to support a claim that he has a character trait for impulsivity.  Thus, I respectfully dissent from the majority's holding that such evidence is categorically barred by our decisions in *State v. Mott*, 187 Ariz. 536 (1997), and *State v. Schantz*, 98 Ariz. 200 (1965).  Because I also agree with the court of appeals that any error in precluding such evidence here was harmless, I concur in the judgment affirming Malone's convictions and sentences.

¶30          Our decisions regarding the admissibility of impulsivity evidence are, as the court of appeals charitably noted, "nuanced."  *State v. Malone*, 245 Ariz. 103, 107 ¶ 12 (App. 2018).  Our caselaw in this area is opaque, largely because *Mott* and *Schantz* were poorly reasoned and confusingly worded.  We should take this opportunity to clarify the scope of *Mott* and *Schantz* instead of using their rickety foundation to erect a barrier to relevant evidence.

¶31          Setting aside *Mott* and *Schantz*, the evidentiary issue in this case would be straightforward.  Rule 404(a) allows a defendant to offer evidence of a pertinent character trait, and since *Christensen* we have recognized that this rule allows a defendant to show that he possesses a trait of acting impulsively, and thus it was less likely that he acted with premeditation.  *See* 129 Ariz. at 34-35.  Subject to Rules of Evidence 702 through 705, experts - including mental health experts - may present evidence to support a defendant's claim that he possesses a character trait for impulsivity.  *See State v. Leteve*, 237 Ariz. 516, 524 ¶ 24 (2015).  Evidence that a defendant has brain damage of a type that makes it more likely he acted impulsively is obviously relevant to whether he has the character trait, and would be admissible under Rules 401 (defining "relevant" evidence) and 402 (noting general rule of admissibility), unless it is precluded by other applicable law or its probative value is substantially outweighed by the danger of confusing the issues, misleading the jury, or other concerns noted in Rule 403.

¶32          The issue thus becomes whether *Schantz* or *Mott* bars the admission of proof of brain damage to support a defendant's claim to have

13

a character trait for impulsivity.  Neither case decided this issue and we should not extend their dicta to preclude such evidence.

¶33        In *Schantz*, the defendant argued that the jury should have been instructed to acquit on a charge of second degree murder unless it was "satisfied beyond a reasonable doubt that the accused . . . was mentally capable of entertaining, and did entertain," an intent to kill.  98 Ariz. at 205 n.1.  Because the crime of second degree murder did not necessarily require proof of an intent to kill, *id.* at 211-12, the defendant instead urged the Court to require this instruction based on the "diminished capacity defense" and then-draft § 4.02(1) of the Model Penal Code (MPC), which allowed the admission of evidence of mental disease or defect when relevant to prove whether the defendant had "a state of mind which is an element of the offense," *id.* at 208.  The requested instruction would have directed an acquittal if the jury was convinced the defendant lacked the mental capacity to form an intent to kill.  *Id.* at 205 n.1.

¶34        The defendant's argument conflated two separate issues.  The first - and the only issue presented in *Schantz* - was whether Arizona recognizes a substantive defense of diminished capacity.  One version of that defense, as *Schantz* recognized, was reflected in draft MPC § 4.01(1), as it relieves a defendant of criminal responsibility not only if he is insane under the *M'Naghten* test, but also if he "lacks substantial capacity . . . to conform his conduct to the requirements of the law" due to a mental disease or defect.  Whether to recognize such a defense, however, is distinct from the second issue - the admissibility of evidence of mental disease or defect to prove whether the defendant acted with the mental state required for the offense, an issue addressed in MPC § 4.02(1).  *See United States v. Pohlot*, 827 F.2d 889, 897 (3d Cir. 1987).  Unfortunately, this Court echoed the defendant's confusion of these issues in its opinion in *Schantz* and would do so again in *Mott*.

¶35        *Schantz* recognized that the "diminished capacity" defense as reflected in the MPC focuses on whether "an accused lacks the capacity to conform his conduct to the requirements of law," 98 Ariz. at 208, and expressly held that we "do not accept § 4.01 of the [MPC] as the test for criminal responsibility in this state," 98 Ariz. at 210-11.  The Court noted that the defendant's proposed instruction could place the jury in "an almost unresolvable dilemma," as it would instruct them to acquit if they found the defendant incapable of forming an intent to kill, while the court would

14

otherwise instruct them that they need not find such an intent to convict. *Id.* at 212.

**¶36**       In dicta, the Court also rejected the defendant's reliance on MPC § 4.01(2), observing that article 4 of the MPC is a "comprehensive scheme" and that the Court lacked constitutional authority to adopt it as Arizona law. *Id.* at 212-13; *cf. id.* at 216 (McFarland and Udall, JJ., specially concurring) (noting discussion of MPC was unnecessary to ruling). The Court concluded by noting that "[i]f we accept defendant's proposal and decide that psychiatric evidence of a mental disease or defect is relevant to prove that a defendant did not have a state of mind which is an element of the offense, the jury would be put to the compulsion of releasing upon society many dangerous criminals who obviously should be placed under confinement." *Id.* at 213. The "proposal" referenced in these remarks was the requested instruction that "permit[ed] the jury to find the defendant not guilty of second degree murder if he was suffering from a mental impairment, defect, disorder, or deficiency so as to be incapable of entertaining malice aforethought, the intent to kill." *Id.* at 207.

**¶37**       *Schantz* was correct as to the issue it decided - Arizona does not recognize a defense of "diminished responsibility" that relieves a defendant of criminal responsibility if a mental disease or defect renders him incapable of forming a mental state. Similarly, the Court was correct in suggesting that evidence of a mental disease or defect is not admissible to show a defendant lacks the capacity to form a requisite mental state, as allowing such evidence would be tantamount to allowing a diminished capacity defense. Indeed, the rejected instruction in *Schantz* would have told the jury it could consider such evidence "to *negate* the accused's capacity to entertain the required malice aforethought, specific intent or knowledge." *Id.* at 205 n.1 (emphasis added). Only in this respect did *Schantz* suggest that evidence of mental disease or defect is inadmissible to "negate" a required mental state.

**¶38**       *Mott* followed *Schantz* both in rejecting a defense of diminished capacity and in confusing that issue with the admissibility of evidence to show whether a defendant acted with a requisite mental state. In *Mott*, the Court upheld the exclusion of expert testimony regarding "battered woman syndrome" offered to establish that the "defendant was not capable of forming the requisite mental state of knowledge or intent." 187 Ariz. at 539-40; *see also id.* at 538 (noting proffered testimony was that

15

"as a battered woman, she was unable to form the requisite mental state"); *id.* at 540 n.4 (noting that defendant had offered evidence "to demonstrate that she did not have the *capacity* to form the requisite mental state"); *id.* at 543 (noting evidence was offered to show "defendant was not capable of forming the specific intent required"). *Mott*, like *Schantz*, characterized such evidence as being offered "to negate the *mens rea* element of the crime." *Id.* at 540. Significantly, when *Mott* overruled *State v. Gonzales*, 140 Ariz. 349 (1984), "to the extent it allowed evidence of a defendant's diminished mental capacity as a defense to a charged crime," the Court emphasized that *Gonzales* involved expert testimony that a defendant, as result of brain damage, "did not and *could not have*" the specific intent required for the crime. 187 Ariz. at 544 (quoting *Gonzales*, 140 Ariz. at 350-51). Rejecting evidence of a mental disease or defect when offered to show a defendant lacks the capacity to form a requisite mental state is, as noted above, logically consistent with rejecting a diminished capacity defense. If incapacity is not a substantive defense, then evidence offered to prove incapacity is irrelevant and inadmissible for that purpose.

¶39        *Mott*, like *Schantz*, said more than was needed to resolve the issue before the Court, and some of its extraneous comments were unclear or simply wrong. Noting that Arizona's legislature had declined to adopt the defense of diminished capacity as reflected in the MPC, the Court then observed that this action implied a decision "not to adopt" MPC § 4.02(1), which in turn "evidences its rejection of the use of psychological testimony to challenge the *mens rea* element of a crime." 187 Ariz. at 540. This passing observation has multiple flaws. It once again confuses recognition of the diminished capacity defense with the issue of admissibility. *See Pohlot*, 827 F.2d at 897 (noting that "[p]roperly understood, [MPC § 4.02] is therefore not a defense at all but merely a rule of evidence"). It also incorrectly suggests that rejecting the defense implies a general bar on admissibility, and while *Mott* (like *Schantz*) correctly recognizes that it is the legislature's province to define crimes and recognize substantive defenses, these opinions overlook that the Arizona Constitution empowers this Court to develop rules of evidence. Ariz. Const. art. 6, § 5(5); *see also State ex rel. Collins v. Seidel*, 142 Ariz. 587, 590 (1984). The legislature fails to do things for many reasons, and its failure to adopt MPC § 4.02 does not imply that it intended prospectively to categorically bar certain types of evidence relevant to whether a defendant acted with the mental state the legislature has said is necessary for the commission of an offense.

**¶40** In short, neither *Schantz* nor *Mott* addresses the admissibility of evidence of mental disease or defect to show that a defendant has a character trait for impulsivity as distinct from the use of such evidence to show that a defendant lacked the capacity to form a requisite mental state. Barring the latter does not require also barring the former. Although *Mott* contains some vague language about rejecting the use of psychological evidence to challenge or "negate" mens rea, 187 Ariz. at 540, 544, these statements were made in the context of precluding evidence that a defendant lacked the capacity to form a specific intent. If those statements were applied more broadly, they would suggest that the expert testimony allowed in *Christensen* and *Leteve* should have been barred.

**¶41** The majority does not identify good reasons for extending *Schantz* and *Mott* to preclude evidence of brain damage when offered to support a claim that the defendant has an impulsive character. Though the Court now recognizes that we have previously conflated a defense of diminished capacity with the use of mental defect evidence more broadly, it declines to alter course. *See supra* ¶¶ 22, 26. We should not infer from the legislature's rejecting a defense of diminished capacity - or its not adopting an evidentiary rule - some implicit intent generally to preclude evidence relevant to whether a defendant acted with a requisite mental state.

**¶42** If defendants can offer evidence that they have an impulsive character trait, there is no logical reason to categorically bar them from offering evidence of brain damage that is associated with such a trait. Excluding such evidence would be particularly unfair when the prosecution challenges the defendant's claim to have an impulsive character. Moreover, because our understanding of the relation between brain physiology and behavior (including "character traits") is incomplete and still evolving, instead of relying on *Schantz* and *Mott* to categorically bar brain damage evidence, I would trust our trial judges to decide its admissibility and jurors to assess its weight under our Rules of Evidence.

**¶43** Our evidentiary rules expressly contemplate the admission of evidence that can be considered for some purposes but not others. Ariz. R. Evid. 105. Thus, concerns about jurors considering the evidence for purposes other than proof of a trait for impulsivity can be addressed through limiting instructions, and we generally presume that jurors can and will follow such instructions. *State v. Ovante*, 231 Ariz. 180, 186 ¶ 24 (2013). If such evidence raises substantial concerns about confusing or misleading the jury, it may be excluded pursuant to Rule 403.

¶**44**     Although I do not support the majority's blanket bar on brain damage evidence to support a claimed character trait for impulsivity, it is not necessary here to decide whether the evidence of Malone's brain damage was properly excluded under Rule 403 or for other reasons. As noted by the court of appeals, any error in excluding this evidence was harmless, given the other admitted evidence showing that Malone had a character trait for impulsivity and the fact that the State did not challenge this evidence or the existence of the character trait. Accordingly, I concur in the Court's judgment.