306 P.3d 89

**STATE of Arizona, Appellee,**

v.

**David Mark BUOT, Appellant.**

**No. 1 CA–CR 12–0198.**

Court of Appeals of Arizona, Division 1, Department E.

July 16, 2013.

As Amended on Denial of Reconsideration Nov. 15, 2013.

Thomas C. Horne, Arizona Attorney General By Joseph T. Maziarz, Section Chief Counsel, Criminal Appeals/Capital Litigation Section, Phoenix, Attorneys for Appellee.

Nicole Farnum, Phoenix, Attorney for Appellant.

**OPINION**

JOHNSEN, Chief Judge.

¶ 1 David Mark Buot appeals his conviction and sentence for second-degree murder. He argues the superior court erred in admitting other-act evidence and violated his due-process rights by precluding expert testimony about a character trait of impulsivity. We hold the court did not err in allowing the other-act evidence and conclude that impulsivity evidence of the sort Buot sought to offer is not admissible on a charge of second-degree murder.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Buot was driving his SUV at more than 40 miles an hour down a city street when he suddenly swerved into oncoming traffic and slammed head-on into a sedan, killing its driver. Buot's wife testified that just prior to the crash, Buot had been arguing with her on his cell phone from his car. She testified Buot had become enraged and "screamed that he was going to drive his car into oncoming traffic." When a bystander phoned her with news of the crash a short while later, she responded, "Oh, my God. He did this on purpose." Buot later admitted to his wife and her friend that he had intentionally swerved into oncoming traffic. The jury convicted Buot of second-degree murder, and the court sentenced him to an aggravated term of 22 years.

¶ 3 We have jurisdiction of Buot's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (West 2013), 13–4031 (West 2013) and –4033(A)(1) (West 2013).[1]

## DISCUSSION

### A. Other–Act Evidence.

¶ 4 Buot first argues the superior court erred in allowing witnesses to testify that many times before the crash, he had threatened to kill himself by driving into oncoming traffic. The State filed a notice of intent to offer the testimony to rebut Buot's defense that the collision had been an accident. At a hearing before the trial began, Buot's counsel told the court that he was considering changing his defense to lack of intent. The court deferred deciding before trial whether to admit the evidence. At trial, Buot did not object when the State examined his wife and other witnesses about his prior threats to drive into oncoming traffic. In settling final jury instructions, Buot's counsel agreed that the court should instruct the jury

that it could consider the evidence for "motive, intent, absence of mistake or accident."

¶ 5 We ordinarily review evidentiary rulings for abuse of discretion. *State v. Mott*, 187 Ariz. 536, 545, 931 P.2d 1046, 1054 (1997). The superior court has discretion to admit other-act evidence offered for a proper purpose under Arizona Rule of Evidence ("Rule") 404(b) if its relevance under Rule 401 is not substantially outweighed by the potential for unfair prejudice under Rule 403 and if the court gives a limiting instruction if requested under Rule 105. *Id.*[2] Because Buot failed to seek a ruling on this evidence at trial and failed to object when the testimony was offered, we review only for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 568, ¶ 22, 115 P.3d 601, 608 (2005). Buot accordingly bears the burden of establishing that the court erred, that the error was fundamental and that the error caused him prejudice. *Id.* at ¶¶ 23, 26.

¶ 6 The superior court did not err, much less commit fundamental error prejudicing Buot, in allowing evidence of Buot's prior threats to kill himself by driving into oncoming traffic. The indictment charged that Buot committed second-degree murder by causing the victim's death without premeditation, either intentionally or knowingly or recklessly under circumstances manifesting extreme indifference to human life. In his opening statement, Buot's counsel repeatedly referred to the collision as an accident and contended Buot lacked the requisite intent. Buot's prior threats accordingly were highly probative to show his intent, his motive and the absence of accident, all permissible purposes for admitting the evidence. *See* Ariz. R. Evid. 404(b) (evidence of other crimes, wrongs or acts may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident").

¶ 7 Buot argues he was unfairly prejudiced by admission of the prior threats because they might have caused the jury to convict "based on his character in general." We do

---

1. Absent material revision after the date of an alleged offense, we cite a statute's current version.

2. Trial in this matter occurred before the effective date of the 2012 amendments to the Arizona Rules of Evidence.

not agree. The court properly instructed the jury that it could not consider Buot's prior threats for the purpose of establishing his character or his propensity to act in conformity therewith, but could consider them only to establish his motive, intent and absence of mistake or accident. *See* Ariz. R. Evid. 105.

¶ 8 Moreover, Buot cannot demonstrate prejudice because the jury heard evidence far more compelling than the testimony about his prior threats: As recounted above, Buot's wife testified that just before the collision, Buot had threatened to drive into oncoming traffic, and she and another witness testified that immediately after the crash, he admitted he had swerved into the other lane deliberately. *See State v. Lucero,* 223 Ariz. 129, 141, ¶ 39, 220 P.3d 249, 261 (App.2009). Under the circumstances, Buot cannot demonstrate that the superior court erred in admitting his prior threats, much less fundamentally erred, causing him prejudice.

## B. Expert Testimony About Impulsivity.

¶ 9 Buot next argues the superior court violated his due-process rights by ruling that his mental-health expert witness could testify only based on conduct by Buot that the witness himself had observed. Buot sought to call Dr. Jack Potts, a psychiatrist, to testify that Buot had a character trait of impulsivity that caused him to act reflexively rather than upon reflection. Buot intended to offer Potts's testimony to argue that he lacked the requisite mental state to commit second-degree murder.[3]

¶ 10 Our supreme court has held that Arizona does not allow a defense of "diminished capacity" short of insanity. *Mott,* 187 Ariz. at 541, 931 P.2d at 1051. Put differently, while a defendant may offer expert psychiatric testimony that he or she should not be held responsible "by reason of insanity," expert psychiatric testimony is not admissible to challenge the *mens rea* element of a crime. *Id.* at 541–45, 931 P.2d at 1051–55. By way of illustration, the defendant in *Mott* was charged with child abuse and felony murder. She did not contend she was insane, but argued that she could not have acted knowingly or intentionally because, as a battered woman, she was not capable of forming the requisite *mens rea. Id.* at 539–40, 931 P.2d at 1049–50. The *Mott* court affirmed the superior court's ruling that the mental-state evidence was not admissible, explaining that the Arizona legislature had "declined to adopt the defense of diminished capacity when presented with the opportunity to do so." *Id.* at 540, 931 P.2d at 1050.[4]

¶ 11 Here, Buot's counsel announced before trial that he would call Potts to testify that Buot "has behavior consistent with an intermittent explosive disorder and that his actions are reflexive and therefore impulsive and not the result of a conscious thought process." After the State moved to preclude Potts's testimony, Buot's counsel argued Potts should be permitted to testify to a "character trait" of impulsivity that would "take away" the *mens rea* required for proof of second-degree murder:

And establishing his character trait that when he loses control of himself like this through his moments of anger, that he acts reflexively and therefore, impulsively, takes away, number one, I think it undermines the intent of knowingly and intentionally. And certainly, it can be argued that it also takes away any kind of thought process for the requirement of recklessness that is required by the third alternative of second degree murder, and that would be a conscious disregard of this risk.

¶ 12 The superior court preliminarily ruled that "[a]ssuming proper foundation," Potts could testify about Bout's "behavioral tendencies or character traits that bear on" his

---

3. We review rulings on the admissibility of evidence for abuse of discretion, but review *de novo* evidentiary rulings that implicate constitutional issues. *State v. Ellison,* 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006).

4. The relevant statute provides in part, "A person may be found guilty except insane if at the time of the commission of the criminal act the person was afflicted with a mental disease or defect of such severity that the person did not know the criminal act was wrong.... Mental disease or defect does not include disorders that result from acute voluntary intoxication or withdrawal from alcohol or drugs, character defects, psychosexual disorders or impulse control disorders." A.R.S. § 13–502(A) (West 2013).

*mens rea*, but would not be permitted to testify about "mental diseases or conditions" that might relate to Buot's capacity to form the requisite *mens rea*. After trial began, it became clear that Potts's opinion that Buot had a character trait of "intermittent explosive disorder" was based on notes from Buot's treating psychiatrist and accounts of others, including Buot's sister, but was not based on anything Potts had personally observed in Buot. Over Buot's objection, the court concluded that Potts could testify only about character traits he personally had observed. Ultimately, Buot did not call Potts to testify.

¶ 13 In ruling on the State's motion, the superior court drew on *Clark v. Arizona,* 548 U.S. 735, 126 S.Ct. 2709, 165 L.Ed.2d 842 (2006), in which the Supreme Court upheld the constitutionality of Arizona's rule allowing mental-health evidence to prove insanity but precluding such evidence to show the absence of a required *mens rea. Id.* at 770–71, 126 S.Ct. 2709. The *Clark* Court considered *Mott* at length, and observed that *Mott* imposed no restriction on what the Court called " 'observation evidence' in the everyday sense," including the defendant's "tendency to think in a certain way and his behavioral characteristics," which "can be relevant to show what in fact was on" the defendant's mind at the time of the crime. *Id.* at 757, 126 S.Ct. 2709.

¶ 14 The distinction the Supreme Court drew between "observation evidence" and other mental-health evidence is not immediately apparent in *Mott* (or any other Arizona case authority). *See id.* at 786, 126 S.Ct. 2709 (Kennedy, J., dissenting). As a basis for the distinction, *Clark* noted that *"Mott* was careful to distinguish [mental-disease or mental-capacity evidence] from observation evidence generally and even from observation evidence that an expert witness might offer." *Id.* at 760, 126 S.Ct. 2709. For support for this proposition, the Court cited *Mott's* discussion of *State v. Christensen,* 129 Ariz. 32, 628 P.2d 580 (1981). *Clark,* 548 U.S. at 760, 126 S.Ct. 2709 (citing *Mott,* 187 Ariz. at 544, 931 P.2d at 1054).

¶ 15 In *Christensen,* a first-degree murder case, the Arizona supreme court held the superior court erred by precluding testimony of a psychiatrist that, based on his interview of the defendant and unspecified test results, the defendant "had difficulty dealing with stress and in stressful situations his actions were more reflexive than reflective." 129 Ariz. at 34, 35, 628 P.2d at 582, 583. Citing Arizona Rule of Evidence 404(a)(1) (evidence of a defendant's character is admissible if offered by the defendant to prove he or she "act[ed] in conformity therewith"), the court held it was "inconsistent with fundamental justice" to prevent the defendant from offering expert testimony that he had a "character trait of acting without reflection." *Id.* at 35–36, 628 P.2d at 583–84.

¶ 16 The *Mott* court distinguished *Christensen* by explaining that Christensen "merely offered evidence about his behavioral tendencies," not "evidence of his diminished mental capacity." 187 Ariz. at 544, 931 P.2d at 1054. *Mott* emphasized that the evidence offered in *Christensen* "was not that [the defendant] was *incapable,* by reason of a mental defect, of premeditating or deliberating" but instead, that "he had a tendency to act impulsively." *Id.* The *Mott* court concluded by observing that the so-called "character trait" evidence was admissible in *Christensen* to show the defendant acted without premeditation. *Id.*

¶ 17 The superior court in this case ruled that Potts could testify about a "character trait" he had observed in Buot, but could not give an expert medical opinion he had formed based on information received from others. Thus, the court allowed "character trait" evidence of the sort that *Mott* said was allowed in *Christensen.* At the same time, by ruling that Potts could testify only based on what he himself had observed, the superior court apparently applied what it understood *Clark* meant by "observation evidence" allowed under Arizona law. 548 U.S. at 760, 126 S.Ct. 2709.

¶ 18 In the years since *Clark* was decided, no Arizona court has addressed these issues or what the Supreme Court in that case meant when it observed that *Christensen* allowed "observation evidence" of a defendant's character trait. We need not do so here because we conclude that *Christensen* does not apply in this case. The *Christensen* court held "character trait" evidence of im-

pulsivity was admissible to prove a defendant charged with first-degree murder did not act with premeditation. But Buot was charged with second-degree murder, which does not require proof of premeditation; we do not understand *Christensen* to require a court to admit character trait evidence of impulsivity to prove a defendant did not act knowingly or recklessly for purposes of second-degree murder.[5]

¶ 19 Buot's argument to the contrary must be that Arizona law requires the court to admit evidence that a defendant charged with second-degree murder lacked the volitional capacity required to commit the crime. Many other states recognize volitional incapacity, or a variant of it, as a proper defense to criminal liability. *Clark,* 548 U.S. at 749–52, 126 S.Ct. 2709 (citing state statutes, observing that "the insanity rule, like the conceptualization of criminal offenses, is substantially open to state choice"). But Arizona's insanity statute, A.R.S. § 13–502(A) (West 2013), does not allow for such a defense. Indeed, our legislature has expressly provided that an "impulse control disorder[]" does not constitute a mental disease or defect sufficient to sustain an insanity finding. A.R.S. § 13–502(A). And the Supreme Court held in *Leland v. State of Oregon,* 343 U.S. 790, 801, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), that due process does not require a state to allow a defendant to disprove guilt by showing an "irresistible impulse" to commit the criminal act.

¶ 20 In sum, under the applicable Arizona statutes and case authorities, a defendant charged with second-degree murder may not offer evidence that due to a character trait of impulsivity, he did not act knowingly or recklessly because he lacked the power to control his actions.

### CONCLUSION

¶ 21 Because the superior court's rulings did not infringe Buot's rights under Arizona law or under the 14th Amendment's guarantee of due process, we affirm Buot's conviction and the resulting sentence.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and JON W. THOMPSON, Judge.

---

5. The mental states required to prove second-degree murder are defined by A.R.S. § 13–105(10) (West 2013):
    (a) "Intentionally" ... means, with respect to a result or to conduct described by a statute defining an offense, that a person's objective is to cause that result or to engage in that conduct.
    (b) "Knowingly" means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that the person's conduct is of that nature or that the circumstance exists....
    (c) "Recklessly" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation....
Although the jury was instructed that it could convict Buot if it concluded he "intentionally caused the death of another person," the State did not argue Buot intended to kill the victim, only that he purposefully drove into oncoming traffic, knowing that death or serious physical injury would result, or with reckless disregard of a grave risk of death of another. *See* A.R.S. § 13–1104(A) (West 2013) (elements of second-degree murder).