NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

WILLIAM ALBERT DERRICO, *Appellant.*

No. 1 CA-CR 18-0853
FILED 11-26-2019

Appeal from the Superior Court in Mohave County
No. S8015CR201700953
The Honorable Billy K. Sipe, Jr., Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kent E. Cattani and Judge James B. Morse Jr. joined.

_____

**C R U Z**, Judge:

**¶1**        William Albert Derrico[1] ("Derrico") appeals his convictions for aggravated assault with a tire knocker and attempted second degree murder, arguing that both are supported by insufficient evidence. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        Derrico and M.W. were friends. Derrico gave M.W. $35 worth of methamphetamine and, in return, M.W. gave Derrico an electronic tablet. Both parties were aware that the tablet had a damaged screen.

**¶3**        A few weeks later, Derrico wanted to reverse the transaction and asked M.W. for $70 back instead of $35, claiming he bought the tablet for $70. M.W. offered to buy back the tablet for $35. Derrico threatened "seven or eight" times to kill M.W. if he didn't give him $70. Derrico also told his neighbor that he wanted to shoot M.W. in the head. M.W. later said he thought that these threats were "nothing," but he made sure to keep his "distance away from [Derrico]."

**¶4**        Early one morning, M.W. was sitting with his dogs in front of a café when Derrico arrived. According to M.W., Derrico angrily exited his vehicle, waved a tire knocker[2] as if he was going to hit M.W., and yelled at M.W. about the money, shouting "You're dead, you're dead." M.W. then ran around the side of the café to avoid Derrico. M.W.'s dogs surrounded Derrico, and Derrico swung the tire knocker at the dogs. At that point,

_____

[1]        The documents in the record inconsistently spell Appellant's name as William Albert Derrico and William Albert D'Errico. We use the name listed on the judgment and sentencing minute entry.

[2]        A tire knocker is a wood stick used to check the air pressure in truck tires.

Derrico retreated to his vehicle and drove off. M.W. then walked home with his dogs.

¶5 Upon arriving at his home, M.W. noticed Derrico's vehicle quickly approaching. Derrico stopped in front of M.W.'s trailer, pulled out a firearm, and shot M.W. in the back of the head. M.W.'s head hit the side of his trailer, and he felt it become numb. Derrico then said, "How's that motherfucker," and quickly drove off. M.W.'s head was bleeding, and he was taken to the emergency room and treated for a gunshot wound to the top of his head.

¶6 Shortly after the shooting, detectives and sheriff's deputies from the Mohave County Sheriff's Office contacted Derrico at his residence and read him *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 436 (1966). Derrico admitted that he had "been after" M.W. for weeks to try to "get even" with him. Derrico then confirmed that he showed up at the café with a tire knocker and that M.W. fled around the side of the café. Derrico also admitted that he shot his firearm "up in the air at him," but that he aimed over the trailer, hoping to "wake [M.W.] up" and convince him to pay $70 for the tablet. The detectives then seized the firearm and tire knocker from Derrico's residence.

¶7 At trial, M.W. testified that Derrico was "wielding [the tire knocker] around like he was going to hit me with it." And when questioned about his apprehension, the following transpired between the defense counsel and M.W.:

> Q. Right. But like you said, you really weren't afraid of him anyway 'cause all his threats are just - - are just him, for lack of a better phrase, blowing smoke up your butt, right?
>
> A. Pretty much.
>
> Q. Okay.
>
> A. But I was gonna keep my distance anyways.

¶8 The jury found Derrico guilty of attempted second degree murder, drive by shooting, and two counts of aggravated assault.

¶9 Derrico timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-120.21(A)(1).

## DISCUSSION

¶10            "We will reverse a conviction 'only if no substantial evidence supports the conviction.'" *State v. Denson*, 241 Ariz. 6, 10, ¶ 17 (App. 2016) (citation omitted). Substantial evidence is evidence "that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 409 (1980). "Evidence sufficient to support a conviction can be direct or circumstantial." *Denson*, 241 Ariz. at 10, ¶ 17.

¶11            We review *de novo* whether the evidence presented is sufficient to support a conviction. *Id.* But it would be inappropriate for us to reevaluate the "evidence to decide if [we] would reach the same conclusions as the trier of fact." *State v. Guerra*, 161 Ariz. 289, 293 (1989). Rather, we must view the evidence "in the light most favorable to sustaining the conviction" and draw all reasonable inferences "against the defendant." *Id.*

I.      Aggravated Assault with a Tire Knocker

¶12            Derrico argues that his conviction for aggravated assault with a tire knocker is not supported by sufficient evidence because he did not intend to place M.W. in reasonable apprehension of imminent injury, and M.W. was not in apprehension of imminent injury. We disagree.

¶13            To be guilty of aggravated assault, the defendant must "[i]ntentionally place[] another person in reasonable apprehension of imminent physical injury" while using a "deadly weapon." A.R.S. §§ 13-1203(A)(2), -1204(A)(2). Prior threats are highly probative to show intent. *State v. Buot*, 232 Ariz. 432, 433, ¶ 6 (App. 2013). "Either direct or circumstantial evidence may prove the victim's apprehension. There is no requirement that the victim testify to actual fright." *State v. Wood*, 180 Ariz. 53, 66 (1994).

¶14            Contrary to Derrico's assertion, there is substantial evidence that he intentionally placed M.W. in reasonable apprehension of imminent physical injury. Derrico admitted that he had "been after" M.W. for months to "get even with the little fucker" and that he wanted to "wake [M.W.] up." Derrico also confirmed that he went to the café with a tire knocker and that M.W. fled. Derrico's recorded admission was played to the jury. Derrico also made prior threats of physical injury, supporting the conclusion that he intended to place M.W. in reasonable apprehension of imminent harm. *See Buot*, 232 Ariz. at 433, ¶ 6. Finally, although M.W. stated in response to defense counsel's questioning that he "[p]retty much" agreed that he wasn't

4

afraid of Derrico, that agreement was not precise, and he further testified "I was [going to] keep my distance anyways" as Derrico was "wielding [the tire knocker] around like he was [going to] hit me with it" and yelling "You're dead, you're dead." In fact, M.W. tried to keep away from Derrico by running around the side of the café. To the extent there is contradictory evidence, we resolve the inference of M.W.'s apprehension against Derrico. *See Guerra*, 161 Ariz. at 293.

¶15 Accordingly, the evidence supports the conclusion that Derrico intentionally placed M.W. in reasonable apprehension of imminent physical injury.

II. Attempted Second Degree Murder

¶16 Derrico argues that his conviction for attempted second degree murder is not supported by sufficient evidence because he intended to shoot over M.W.'s head and therefore lacked the specific intent to kill M.W. or knowledge that his conduct would cause M.W.'s death. We disagree.

¶17 To be guilty of second degree murder, the defendant must, without premeditation, "intentionally cause[] the death of another person." A.R.S. § 13-1104(A)(1). "[I]n order to commit an 'attempt' a defendant must have an intent to perform acts and to achieve a result which, if accomplished, would constitute the crime." *State v. Curry*, 187 Ariz. 623, 627 (App. 1996) (emphasis omitted); *see also* A.R.S. § 13-1001. "The offense of attempted second degree murder requires proof that the defendant intended or knew that his conduct would cause death." *State v. Ontiveros*, 206 Ariz. 539, 542, ¶ 14 (App. 2003). Prior threats are highly probative to show intent and absence of mistake. *See Buot*, 232 Ariz. at 433, ¶ 6; *see also Wood*, 180 Ariz. at 63 (recognizing that prior threats are relevant to not only show intent but premeditation).

¶18 In this case, the State presented evidence that Derrico had "been after" M.W. for weeks and threatened at least seven times to kill M.W. A neighbor testified that Derrico even said that he was going to "shoot [M.W.] in the head." And Derrico did, in fact, shoot M.W. in the head and yelled "How's that" after doing so. *See State v. Vann*, 11 Ariz. App. 180, 182 (1970) (stating that what a "defendant does or fails to do and what he says may be evidence" of intent). Derrico's use of a firearm alone is sufficient for the jury to infer an intent to kill, and the fact that Derrico shot M.W. in the head significantly bolsters that inference. *See State v. McIntyre*, 106 Ariz. 439, 443 (1970) (noting that use of a deadly weapon is

sufficient evidence of intent). Finally, the jury was not required to accept Derrico's self-serving statement that he aimed over M.W.'s head. *See State v. Pieck*, 111 Ariz. 318, 320 (1974) ("The jury is not compelled to accept the story or believe the testimony of an interested party.").

**¶19** Accordingly, there is substantial evidence that Derrico engaged in conduct intending to cause M.W.'s death.

## CONCLUSION

**¶20** For the foregoing reasons, we affirm Derrico's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA