NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RANDY STEVEN ZULEGER, *Appellant.*

No. 1 CA-CR 19-0288
FILED 6-9-2020

Appeal from the Superior Court in Maricopa County
No. CR2016-156429-001
The Honorable Erin O'Brien Otis, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael T. O'Toole
*Counsel for Appellee*

Maricopa County Legal Advocate's Office, Phoenix
By Grace M. Guisewite
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Maria Elena Cruz joined.

---

**G A S S**, Judge:

**¶1**        Randy Zuleger appeals his conviction for first-degree murder, contending the superior court erroneously excluded evidence bearing on premeditation and the prosecutor committed misconduct during closing arguments. Because the superior court correctly excluded the evidence and the prosecutor's challenged remarks did not amount to reversible misconduct, this court affirms Zuleger's conviction.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        This court reviews the facts in the light most favorable to sustaining the jury's verdict, resolving all reasonable inferences against Zuleger. *See State v. Felix*, 237 Ariz. 280, 283, ¶ 2 (App. 2015). This court does not weigh the evidence or assess witness credibility, because those are jury functions. *See State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004); *State v. Salman*, 182 Ariz. 359, 361 (App. 1994).

**¶3**        In December 2016, Zuleger killed his father, E.Z., by stabbing him multiple times with two knives. Zuleger's mother, C.Z., received a deep laceration to her hand when she tried to intervene. The State charged Zuleger with the premeditated, first-degree murder of E.Z. and the aggravated assault of C.Z. The fact Zuleger killed E.Z. was undisputed. The principal issue at trial was whether he premeditated the murder.

**¶4**        Zuleger lived with E.Z. and C.Z. for most of his life. In 2016, he moved into an RV parked on their property but continued to shower, eat, and watch television in the house. The day before the murder, neighbors heard Zuleger shout "f--- you, old man" to E.Z. and yell toward the house while pacing on the back patio. E.Z. called the police, who came to the house but did not make an arrest. After the officers left, E.Z. told Zuleger they were going to lock the back door to the house, which they did not normally do.

¶5         On the morning of the murder, E.Z. and C.Z. were in their bedroom when they heard the back door open. E.Z. went to check, telling C.Z. it was Zuleger and "[h]e seemed fine." Less than a minute later, they heard Zuleger make an "awful scream." E.Z. went into the hallway, and Zuleger pushed him to the ground. As he rose, E.Z. told C.Z. to "[c]all the police."

¶6         C.Z. went into the family room to use the phone and E.Z. followed her. C.Z. could see Zuleger in the kitchen. Zuleger moved toward E.Z. with a knife in each hand, and C.Z. heard E.Z. say, "Randy, you stabbed me." The two men moved into the living room, where Zuleger brought E.Z. to the ground. In an attempt to stop Zuleger, C.Z. grabbed the blade end of one of the knives Zuleger was holding, cutting herself in the process. She then ran to the kitchen where she called 911. C.Z. could see Zuleger stabbing E.Z. In the background of the 911 recording, Zuleger's voice can be heard saying "f--- you" and "asshole" repeatedly, as well as heavy grunting and breathing.

¶7         At his trial, Zuleger said he and E.Z. got into an argument in the kitchen when E.Z. punched him in the eye and they each picked up a knife. Zuleger then walked into the living room where E.Z. tackled him. Zuleger said he stabbed E.Z. in self-defense as they fought. Zuleger also said C.Z. was not present during the fight, it was not his voice on the 911 call, and C.Z. must have cut herself by picking up one of the knives after the fight.

¶8         The jury found Zuleger guilty on both counts. The superior court sentenced him to concurrent prison terms of natural life for the murder conviction and six years for the aggravated assault. Zuleger timely appealed the murder conviction. This court has jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and A.R.S. §§ 12-120.21.A.1, 13-4031, and 13-4032.A.1.

## ANALYSIS

**I.    The superior court appropriately excluded evidence showing Zuleger had mental health problems to prove a character trait for impulsive behavior.**

¶9         Zuleger suffers from mental health issues but did not claim insanity as a defense. Before and throughout the course of trial, the parties litigated the extent to which Zuleger could offer evidence related to his mental health to rebut premeditation. On appeal, Zuleger argues the superior court erroneously excluded evidence critical to his defense. This

court reviews rulings on admission of evidence for an abuse of discretion but considers issues of law related to admissibility *de novo*. *State v. Leteve*, 237 Ariz. 516, 523, ¶ 18 (2015).

**¶10** Absent an insanity defense, Arizona bars defendants from offering evidence suggesting a mental disorder prevented them from forming the *mens rea* element of a charged offense. *See State v. Mott*, 187 Ariz. 536, 539–45 (1997). Premeditation is an element of first-degree murder under paragraph 13-1105.A.1 and therefore part of the *mens rea* of the offense.[1] *See State v. Boyston*, 231 Ariz. 539, 549, ¶ 50 (2013).

**¶11** "Using mental disease or defect evidence to refute the *mens rea* element of a crime is commonly referred to as a 'diminished capacity' or 'diminished responsibility' defense." *State v. Malone*, 247 Ariz. 29, 31, ¶ 9 (2019) (italics added). A defendant charged with first-degree murder, therefore, may not offer diminished capacity evidence short of insanity to negate premeditation.

**¶12** This prohibition, however, does not preclude a defendant charged with first-degree murder from challenging premeditation by offering "behavioral-tendency evidence." *See id.* at 32, ¶ 11. Behavioral-tendency is evidence the defendant had a "character trait" or "behavioral tendencies" for acting "impulsively" or without reflection. *See id.* at 31-32, ¶¶ 10-11; *see also* Ariz. R. Evid. 404(a)(1) (defendant may offer evidence of pertinent character trait to show action in conformity), 405 (methods of proving character trait).

**¶13** The superior court allowed Zuleger to question both C.Z. and his sister-in-law on whether they had seen him act impulsively or unpredictably, and to describe some of those instances. Zuleger's sister-in-law testified about a time she heard him yelling while he was alone in his room. C.Z. testified she also had heard Zuleger scream for no apparent reason. C.Z. further described how Zuleger's behavior and demeanor could change quickly from one moment to the next, and his bizarre attempts to get fired from jobs.

**¶14** The superior court prohibited Zuleger from offering the following evidence: (1) testimony of family members about instances when

---

[1] Arizona defines "premeditation" as acting with the intent or knowledge to "kill another human being, when such intention or knowledge precedes the killing *by any length of time to permit reflection*." *See* A.R.S. § 13-1101.1. (emphasis added).

Zuleger tore up the house, did not eat for days, and expressed concern people had planted bombs in his residence and replaced his money with fake money; (2) he was involuntarily committed to a mental health facility several months before the murder; (3) his parents called law enforcement the day before the murder because they wanted him taken to a mental health facility; (4) when he was apprehended after the murder, he falsely told an officer he was on PCP; and (5) when he was brought to the station after being arrested, he said he had immunity and had received a pardon for the killing. The superior court also declined to ask C.Z. a juror question about whether Zuleger was "ever diagnosed or treated for [a] mental disorder."

¶15        This court discerns no error in the superior court's exclusion of the evidence described above. Zuleger's unusual statements and behavior before and after the murder show paranoid and delusional beliefs—not a tendency to act without reflection. Neither does Zuleger's previous commitment to a mental health facility, nor his parents' desire for him to be committed again, show he tended to act reflexively or impulsively. To the extent Zuleger's parents sought to get him treatment because he exhibited impulsive behavior, the superior court permitted Zuleger's family members to testify about the behavior.

¶16        Zuleger contends the excluded evidence was admissible "observation evidence." *See Clark v. Arizona*, 548 U.S. 735 (2006). In *Clark*, the United States Supreme Court interpreted *Mott* as prohibiting—in the absence of an insanity defense—professional, usually expert, opinion evidence regarding the defendant's ability to form the requisite *mens rea* of an offense. *See* 548 U.S. at 758–60. *Clark* held *Mott*'s prohibition on "mental-disease evidence" and "capacity evidence" did not violate due process. *See id.* at 769–79. *Clark* then held *Mott* permitted defendants to offer a third type of evidence bearing on *mens rea*—"observation evidence." *Id.* at 757, 760.

¶17        *Clark* described observation evidence as "testimony from those who observed what [the defendant] did and heard what he said." *Id.* at 757. Such evidence might "support a professional diagnosis of mental disease and in any event is the kind of evidence that can be relevant to show what in fact was on [the defendant's] mind" at the time of the offense. *Id.* The observation evidence in *Clark* involved the defendant's "behavior at home and with friends, his expressions of belief around the time of the killing that 'aliens' were inhabiting the bodies of local people (including government agents), his driving around the neighborhood before the police arrived and so on." *Id. Clark* did not address whether a state could constitutionally prohibit observation evidence. *Id.* at 765.

¶18 Even characterizing the excluded evidence as "observation evidence" would not end the analysis. "Observation evidence" is not *per se* admissible. Rather, the defendant must demonstrate the observation evidence is relevant with respect to *mens rea*. *See State v. Wright*, 214 Ariz. 540, 545, ¶ 16 (App. 2007) (no error in precluding proposed observation evidence where the defendant "failed to link the evidence to the behavioral characteristics relevant to the required mental state"). Here, Zuleger did not show the excluded evidence tended to negate premeditation.

¶19 Regardless, as this court recognized in *State v. Buot*, "[t]he distinction the Supreme Court drew [in *Clark*] between 'observation evidence' and other mental-health evidence is not immediately apparent in *Mott* (or any other Arizona case authority)." 232 Ariz. 432, 435, ¶ 14 (App. 2013) (citing the *Clark* dissent). *Clark* itself recognized its categorization of observation, capacity, and mental-disease evidence was imprecise at the margins, leaving finer determinations to Arizona courts. *See* 548 U.S. at 759.

¶20 Arizona's Supreme Court has limited the use of observation evidence to showing the defendant had a behavioral tendency to act reflexively or impulsively. *See Malone*, 247 Ariz. at 34, ¶ 20. And though "behavioral-tendency evidence is permissible to negate *mens rea*, linking that behavior to a mental disease or defect, whether directly or under the guise of corroboration, is impermissible." *See id.* (italics added). Because the evidence did not show Zuleger had a character trait for acting reflexively or impulsively, the superior court did not err in excluding it.

## II. Zuleger fails to establish prosecutorial misconduct warranting reversal.

¶21 Zuleger argues three statements the prosecutor made during closing arguments warrant reversal: (1) the physical evidence did not support Zuleger's testimony E.Z. threatened him with a knife; (2) if Zuleger had a titanium plate in his face where E.Z. allegedly punched him, he was likelier than someone without such a plate to show bruising; and (3) Zuleger conceded the distance from the hallway to the kitchen (the path he took to obtain the knives after pushing E.Z. to the ground) was 49 feet.

¶22 A defendant shoulders a heavy burden to succeed in obtaining a reversal for prosecutorial misconduct. *See State v. Moody*, 208 Ariz. 424, 459, ¶ 145 (2004) The defendant must not only show misconduct occurred, but also establish the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Hughes*, 193 Ariz. 72, 79, ¶ 26 (1998). This court considers Zuleger's claims

of prosecutorial misconduct both individually and cumulatively. *See State v. Goudeau*, 239 Ariz. 421, 465, ¶ 192 (2016).

**¶23** The standard of review depends on whether Zuleger objected to the statement. *See State v. Martinez*, 230 Ariz. 208, 214, ¶ 25 (2012). If he did, this court reviews for harmless error; if he did not, this court reviews for fundamental error. *See id.* For harmless error, the "standard is an objective one, and requires a showing that without the error, a reasonable jury could have plausibly and intelligently returned a different verdict." *State v. Riley*, 248 Ariz. 154, ___, ¶ 68 (2020) (internal citations omitted). "On fundamental error review, the defendant has the burden of proving that the court erred, that the error was fundamental in nature, and that he was prejudiced thereby." *State v. Meeds*, 244 Ariz. 454, 460–61, ¶ 13 (App. 2018), *review denied* (Apr. 5, 2019). To establish prejudice, the defendant "must show that without this evidence and attendant argument, a reasonable jury *could have* reached a different verdict." *State v. Escalante*, 245 Ariz. 135, 144, ¶ 29 (2018) (emphasis original, internal quotation omitted).

**A. The prosecutor's statement about the fingerprints on the knives does not constitute misconduct.**

**¶24** The State analyzed the two knives found next to E.Z.'s body for fingerprints. Prints taken from one of the knives matched Zuleger, but prints taken from the other contained too little detail to compare with known specimens. In the State's closing argument, the prosecutor asserted the fingerprint evidence did not support Zuleger's assertion E.Z. was holding one of the knives. Defense counsel objected, saying the prosecutor was misstating the testimony. The superior court overruled the objection and said it would allow jurors to rely on their own recollection.

**¶25** Here, the prosecutor's statement reflected an inference reasonably supported by the evidence. The remark, therefore, did not amount to misconduct. *See State v. Burns*, 237 Ariz. 1, 32, ¶ 152 (2015); *State v. Buccheri-Bianca*, 233 Ariz. 324, 329, ¶ 15 (App. 2013).

**B. The prosecutor's statement about bruising does not constitute fundamental error.**

**¶26** On cross-examination, the State asked Zuleger if he suffered a black eye after E.Z. allegedly punched him. Zuleger replied he did not because "I have a titanium plate in my eye." During closing argument, the prosecutor advised jurors to look at a close-up photo of Zuleger's face taken after his arrest, asserting it showed "no mark from being punched." The prosecutor then said if Zuleger in fact had a titanium plate where E.Z.

allegedly hit him, "[h]is skin would have bruised more readily." Defense counsel did not object. Zuleger now contends the prosecutor committed misconduct by drawing a conclusion not supported by expert testimony. *See State v. Gonzales*, 105 Ariz. 434, 437 (1970) ("attorneys are not permitted to introduce or comment upon evidence which has not previously been offered and placed before the jury" during closing arguments).

¶27 Though the prosecutor's statement may have improperly ranged outside the scope of trial evidence, it does not rise to the level of fundamental error depriving Zuleger of a fair trial. *See Moody*, 208 Ariz. at 463, ¶ 167. The remark was brief, and the superior court previously instructed the jurors that closing arguments were not evidence.

**C.** **The prosecutor's statement about Zuleger conceding the 49-foot distance to the kitchen was harmless error.**

¶28 A detective who took measurements in the home testified the distance from the hallway, where Zuleger initially forced E.Z. to the ground to the area of the kitchen where Zuleger obtained the knives, measured 49 feet. The detective said it was another 45 feet from the kitchen to the location in the living room where Zuleger killed E.Z.

¶29 During Zuleger's testimony, the State asked him if he agreed with the detective's measurements. Zuleger did not, saying it was "maybe 15" feet between the kitchen and where E.Z. was killed. When asked if Zuleger disputed a detective measured the distance, Zuleger said he did not "know if [the detective] did" because he "never saw" the measuring take place. The State also asked Zuleger if he disputed it was "46 [sic] feet from . . . the kitchen through the family room to where [his] father's body was found." Zuleger said, "I am not disputing anything. I do not know."

¶30 During closing argument, the prosecutor told jurors they "heard from the defendant he doesn't contest that [the distance from the hallway to the kitchen is] 49 feet." Defense counsel objected, saying the prosecutor had misstated Zuleger's testimony. The superior court "overrule[d] the objection and [would] allow the jury to rely on their own notes that they took in terms of what the testimony is."

¶31 The prosecutor incorrectly described Zuleger's testimony. "Still, the mere fact that a prosecutor makes improper remarks does not require reversal unless, under the circumstances of the case, the jury was probably influenced by those remarks." *Moody*, 208 Ariz. at 460, ¶ 151 (internal quotation omitted). Whether or not Zuleger contested the distance from the hallway to the kitchen has no bearing on whether he premeditated

the killing. What matters is the actual distance and path he took. Here, jurors could consider C.Z.'s testimony and photographs showing how the rooms connected to draw their own conclusions regarding how long it would have taken Zuleger to travel from the hallway to the kitchen. Combined with the superior court instructing jurors not to treat counsel's arguments as evidence, Zuleger fails to show the prosecutor's statement was reasonably likely to have affected the verdict. *See id.*

### D. Considering the cumulative effect of the prosecutor's misstatements, Zuleger received a fair trial.

¶32 Even if instances of misconduct do not individually warrant reversal, this court must assess whether "the total effect rendered defendant's trial unfair." *See State v. Hulsey*, 243 Ariz. 367, 388, ¶ 88 (2018). Here, the challenged statements do require reversal because they do not reveal "persistent and pervasive misconduct" showing "the prosecutor intentionally engaged in improper conduct . . . with indifference, if not a specific intent, to prejudice the defendant." *See Goudeau*, 239 Ariz. at 469, ¶ 213 (internal quotation marks and citations omitted). For the reasons set forth above, each remark was unlikely to impact the jury's overall consideration of the evidence. Considered cumulatively and given the mitigating effect of the superior court's instructions, the remarks were not "so prolonged or pronounced that [they] affected the fairness of trial." *See Hulsey*, 243 Ariz. at 389, ¶ 89, 394, ¶ 123.

### CONCLUSION

¶33 For the above reasons, this court affirms Zuleger's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA